HUME v. CARPENTER et al. (No. 5548.)*

(Court of Civil Appeals of Texas. Austin. April 27, 1916. On Appellant's Motion for Rehearing, June 14, 1916. Rehearing Denied Oct. 11, 1916.)

1. ESTOPPEL ⬧52—ELEMENTS—IN GENERAL.

The essential elements of an estoppel are a false representation or concealment of a material fact, made with the knowledge of the fact to one ignorant of the truth of the matter with intent that he should act upon it and which induces him to act upon it.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. §§ 121–125, 127; Dec. Dig. ⬧52.]

2. ESTOPPEL ⬧98(2) — ELEMENTS — KNOWLEDGE OF FACT.

A statement by one who had been the secretary and treasurer of an investment corporation, made to the assistant county attorney prior to the institution of tax proceedings against lots of unknown owners, to the effect that the company was dissolved, and that the ownership of the lots was unknown to him, made when he had been away from the city where it had its proper office for some time and was not familiar with the company's business, would not estop a purchaser from the company subsequent to such proceeding from claiming that the record title was then in the company.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. § 290; Dec. Dig. ⬧98(2).]

3. ESTOPPEL ⬧55—ELEMENTS—RELIANCE ON REPRESENTATIONS.

Such statement constituted no estoppel against such claim by the purchaser, where it appeared that the county attorney knew that the record title was then in the company, and where the records failed to show that it had ever conveyed the title, where the county attorney did not wholly rely or act on such statement, but acted partly on information otherwise acquired, and since the statement was not made to induce his action in making a purchase for himself or others, but was made to him merely in the line of his duty as a county officer in ascertaining against whom suit might be brought to collect the unpaid taxes on the property.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. §§ 136–141; Dec. Dig. ⬧55.]

4. CORPORATIONS ⬧425(5)—ACT OF OFFICER—ESTOPPEL.

The secretary of an investment corporation who had attested its deeds to purchasers, but who had never undertaken to convey its property without the consent of its directors, and who had no express authority to state to the county attorney that the company had been dissolved and that he did not know who held the record title to certain lots formerly owned by it, which statement was not made while acting in behalf of the company, had no such authority to make the statement as would estop subsequent purchaser from the company from claiming that record title was in it, when they were sold in a tax proceeding against unknown owners.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1700; Dec. Dig. ⬧425(5).]

5. TAXATION ⬧642 — SALE OF TAXES — INQUIRY AS TO OWNER—STATUTE.

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 7696, providing that whenever the name of the owner of lots returned delinquent for taxes is unknown, upon affidavit setting out that fact to the state's attorney and after inquiry cannot be ascertained, such parties may be cited and made parties defendant by notice in the name of the state or county, the county attorney's failure to exercise such diligence as would have ascertained the true owner, rendered the tax proceeding and sale thereunder void; and the fact that the petition therein was duly attested by the attorney would not be conclusive evidence of the fact that the owner was unknown; and in a suit to trespass to try title thereto a subsequent purchaser from the party having the record title at the time of such proceeding might show by competent evidence that the attorney in the exercise of reasonable diligence could have ascertained the ownership of the land before the institution of the proceeding, and if he does so, the judgment therein and the sheriff's deed based thereon is void and conveys no title.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1305–1307; Dec. Dig. ⬧642.]

6. TAXATION ⬧811—SALE FOR TAXES—QUESTION FOR JURY—INQUIRY AS TO OWNER.

In trespass to try title to land sold in tax proceeding against unknown owners, whether the county attorney had exercised such diligence as would have ascertained the ownership before the proceeding, held a question for the jury.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1609, 1610; Dec. Dig. ⬧811.]

On Appellant's Motion for Rehearing.

7. APPEAL AND ERROR ⬧263(1) — INSTRUCTIONS—ACQUIESCENCE—STATUTE.

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 2061, providing that the ruling of the court in giving or refusing instructions shall be regarded as approved, unless excepted to, applies to appellees as well as to appellants.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 1516; Dec. Dig. ⬧263(1).]

8. APPEAL AND ERROR ⬧747(2)—CROSS-ASSIGNMENTS OF ERROR—RULE OF COURT.

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 1639, requiring decision of all issues presented by proper assignments of error, and in view of rule 101 for district and county courts (159 S. W. xi), relating to assignments of error, appellees, even if they had properly excepted to the court's charge and its refusal to charge,

could not complain thereof where they failed to file any cross-assignments of error.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3053; Dec. Dig. ☞747(2).]

Key, C. J., dissenting in part.

Appeal from District Court, McLennan County; J. Walter Cocke, Special Judge.

Trespass to try title by the Central Texas Improvement Company and W. B. Carrington against R. B. Carpenter and others, in which S. L. Hume filed a plea of intervention, setting up the ordinary allegations in trespass to try title. Dismissed as to plaintiffs Central Texas Improvement Company and W. B. Carrington, and judgment for defendants, and the intervener Hume appeals. Reversed, and judgment rendered for intervener.

H. N. Atkinson, of Houston, W. L. Eason and W. B. Carrington, both of Waco, for appellant. Pat M. Neff, Edgar E. Witt, Wm. R. Saunders, and Chas. B. Braun, all of Waco, for appellees.

Statement of the Case.

RICE, J. In 1890 the Provident Investment Company, a private corporation, was chartered and organized for the purpose of buying, improving, and selling real estate, with its principal office in the city of Waco; its directors and officers being prominent business men of said city, Sam Sanger being president and H. N. Atkinson secretary and treasurer during the time of the transactions herein involved. Soon thereafter the company purchased several tracts of land adjacent to the city of Waco, which it plotted into blocks, lots, streets, and alleys as an addition to the city of Waco, known as Provident Heights addition, and made numerous sales thereof, the deeds being executed by Sanger as president and attested by Atkinson as secretary, which were duly recorded in the Deed Records of McLennan county. The unsold portion of this property seems to have been rendered for taxes up to 1901 in the name of the company, but after that time was rendered as "unknown" for the years 1902, 1903, and 1904, inclusive, and for which years the taxes were unpaid, and the property was placed on the delinquent roll.

During the year 1905 suit was instituted in the name of the state by the county attorney of McLennan county against the unknown owners of block 41 of said addition, to enforce the collection of the taxes due thereon for the years 1900, 1902, and 1903, and judgment was thereafter rendered against the unknown owners, and the property sold and purchased by W. R. Denton, for a nominal consideration, who thereafter conveyed the same to his codefendants Cannaday and Carpenter. The Provident Investment Company, at time of such tax proceedings against the unknown owners, and at the time of the execution of the deed to Carpenter and Cannaday, was the record owner of the lots in

controversy from the sovereignty of the soil. Subsequent to such sale, and before this suit was brought, the Central Texas Improvement Company and W. B. Carrington purchased from the Provident Investment Company the unsold portion of said addition, including lots 1, 2, 5, 6, 7, 8, and 9 in block No. 41 thereof, and they thereafter conveyed same to S. L. Hume; and this suit was brought on the 22d of December, 1913, in the ordinary form of trespass to try title, by the Central Texas Improvement Company, a corporation, and W. B. Carrington, against defendants R. B. Carpenter, W. R. Denton and wife, Mattie D. Denton, and H. E. Cannaday, to recover title and possession of the lots above named.

On the 2d of May, 1914, S. L. Hume, appellant herein, filed his plea of intervention, complaining of the defendants hereinbefore mentioned, setting up the ordinary allegations in trespass to try title to said lots.

Appellees, defendants below, in their second amended original answer denied the allegations of plaintiff's pleading, and interposed plea of not guilty, as well as the three and five year statutes of limitation, and also improvements in good faith; and the Central Texas Improvement Company and W. B. Carrington and intervener Hume filed their second supplemental petition, wherein, among other things, they denied each and all of the allegations of said defendants' second amended original answer, and prayed as in their original pleadings for title and possession of the property, except that appellant admitted the improvements alleged.

During the progress of the trial at the conclusion of the evidence and before the charge was read to the jury, the Central Texas Improvement Company and W. B. Carrington, on their own motion, were dismissed from the case without prejudice, after which the trial proceeded in the name of the intervener alone. The court, after instructing the jury that the evidence showed that the intervener had the record title to the lots in controversy, submitted the case on the issues of estoppel and improvements in good faith only, these phases being submitted on special issues; and the jury in response to both found in favor of appellees, and judgment was entered in accordance therewith, from which appellant has prosecuted this appeal.

The ground of estoppel relied on was based on certain alleged statements by Atkinson to Street, the assistant county attorney of McLennan county, made prior to the institution of the tax proceedings, to the effect that the Provident Investment Company was dissolved, and that the ownership of the lots in question was unknown to him. It appears from the testimony of Mr. Street that before he filed the tax proceedings against the unknown owners of the property above referred to, that he had understood that the Provident Investment Company had been dis-

solved, and that Col. Atkinson, its former secretary and treasurer, had moved to Houston, and that he knew more about the history of the property than any one else; and for the purpose of obtaining information he wrote him in regard to same, but received no reply. Soon thereafter he met Col. Atkinson on the street in Waco, and asked him if he had received his letter, to which Atkinson replied, "Yes, but on account of press of business I have not answered it." He told Atkinson that he was anxious to find out who owned the lots, as he wanted to collect the delinquent taxes. He then asked him whether the company had dissolved, and who were the owners of the lots in controversy, and where were its records. Atkinson stated that the company had dissolved, having previously distributed its property among the stockholders; that he did not know who now owned the lots in controversy, and that the stock book was lost; that he did not know much about it, and particularly as to the lots inquired about. On cross-examination Mr. Street admitted in this connection that Atkinson stated that he had been absent from Waco for a considerable period of time, during which he had given no attention to the business of the company, and that he did not know who owned the lots.

It was shown that Mr. Denton, before purchasing the property in controversy, had a talk with Street about the title, who told him what Atkinson had said in reference thereto; but Denton stated that in purchasing the property he relied on his own knowledge, as well as upon what Street told him. Mr. Street admitted that the conversation with Atkinson was a hurried one on the street, and at the time of such conversation he knew that the deed records showed the title to the property in controversy to be in the Provident Investment Company, having examined the records for the purpose of ascertaining who owned the lots. He further admitted that he had testified in the Harvey Case that he might have gotten the impression that the property had been distributed among the stockholders from other sources—may have been quick to conclude this on account of such information.

It further appears that Street, before bringing suit, had also talked with Mr. Barcus, who was formerly assistant county attorney, about the ownership of these lots, who detailed a conversation had by him (Barcus) with Col. Atkinson in reference thereto, the effect of which was to show that Atkinson had stated to Barcus that he did not know who owned the lots in controversy. This seems to have been about the extent of the inquiry made as to the ownership of the lots prior to the institution of the tax proceedings against the unknown owners by Mr. Street, acting as assistant county attorney; and, notwithstanding the fact that the Provident Investment Company was a Waco concern, whose officers and directors were all prominent business men of said city, no further effort, than as above outlined, is shown on the part of Mr. Street to ascertain the ownership of said lots before instituting the tax suit.

It appears that Carpenter, before purchasing the property conveyed to him, had an abstract of the title made, which disclosed the fact of these tax proceedings against the unknown owners, and that his attorneys advised him that he was only obtaining a tax title to the property; that while he might never be bothered, that he was taking a chance at it, and suggested to him that he call upon Mr. Sanger, who was still acting as president of the company. It seems that he called to see Mr. Sanger in accordance with such suggestion, and he stated that Sanger told him, in substance, that the company was dissolved and was satisfied that no one would interfere with him in the purchase; that so far as he (Sanger) was concerned, he would not, and expressed the belief that he would be safe in making the purchase, after which he purchased the property from Denton; but this conversation occurred long subsequent to the tax proceeding and sale thereunder.

### Opinion.

The chief contention on the part of appellant is that the court erred in submitting the case to the jury on the charge of estoppel, insisting: (1) That the statements of Col. Atkinson, the secretary and treasurer of the company, were not sufficient upon which to base such charge; and (2) if it be conceded that they were, then it does not appear therefrom that Atkinson had any authority from the company, either express or implied, to make any statement that would estop appellant, citing in support of such contention Bynum v. Preston, 69 Tex. 287, 6 S. W. 428, 5 Am. St. Rep. 49; Downes v. Self, 28 Tex. Civ. App. 356, 67 S. W. 897, writ of error refused 95 Tex. 677; Page v. Arnim, 29 Tex. 54; Burleson v. Burleson, 28 Tex. 383; Gaffney v. Clark, 115 S. W. 330; McLaren v. Jones, 89 Tex. 131, 33 S. W. 849; Mayer v. Ramsey, 46 Tex. 371; Near v. Green, 113 Iowa, 647, 85 N. W. 799; Hilburn v. Harris, 29 S. W. 923; Wortham v. Thompson, 81 Tex. 348, 16 S. W. 1059. See, also, Bigelow on Estoppel, 484.

[1] In the case first cited it is stated that the essential elements of an estoppel are: (1) There must have been a false representation or concealment of a material fact; (2) the representation must have been made with the knowledge of the facts; (3) the party to whom it was made must have been ignorant of the truth of the matter; (4) it must have been made with intention that the other party should act upon it; and (5) the other party must have been induced to act upon it. So that if any of the essential elements of estoppel, as above outlined, are wanting,

then it was improper for the court to submit this issue to the jury.

[2-4] Taking the evidence of Atkinson most strongly against appellant, we think it fails to meet the requirements of the law in order to establish an estoppel. In the first place the representations must have been made with a knowledge of the facts. It appears from the testimony of Col. Atkinson that he had been away from Waco for some time, and was not familiar with the business of the company, and did not know to whom the lots belonged; nor does it appear that Mr. Street, who was acting in behalf of the state, was wholly ignorant of the truth of the matter, since it appears that he knew the record title at the time he made the inquiry of Atkinson was in the Provident Investment Company, and the records failed to show that the company had ever conveyed the property. To constitute an estoppel it seems, according to the fifth subdivision above outlined, that Street must have relied and been induced to act upon such statements; while it is shown from the evidence that he did not wholly rely thereon, but acted partly on information otherwise acquired. Besides this, we think there is nothing in the evidence showing any authority on the part of Atkinson to make any statements that would estop the Provident Investment Company. The various deeds of the purchasers of this property offered in evidence, and which were of record at the time the tax proceedings were instituted, were executed by Sanger as president and attested by Atkinson as secretary of the company. The evidence shows that Atkinson had never undertaken at any time to convey the property without the consent of the directors. No express authority to make such statements appears in the record; nor is it shown that such statements were made while acting in behalf of the company. See volume 2, Herman on Estoppel and Res Adjudicata, bottom of page 1300. Nor do we think that any such authority can be implied from its course of dealing. It may be doubtful under the facts in evidence if anything less than a resolution of the board of directors would have authorized the disposition of this property on the part of Atkinson. Certainly, a street corner conversation ought not to be held to have such effect. Apart from this, however, we do not think the law of estoppel is applicable to or arises out of the facts of this case, and should not have been given in charge to the jury. The statements elicited by Street from Atkinson were not for the purpose of governing his action in making a purchase for himself or others, but was merely in the line of his duty as a county officer, for the purpose of ascertaining against whom suit might be instituted in order to collect the unpaid taxes due upon such property; for which reason we think that the court erred in submitting this issue to the jury.

[5, 6] In our opinion the only issue involved in this appeal that should have been submitted to the jury for their consideration was as to whether or not Mr. Street, the assistant county attorney, before filing the tax proceeding, exercised due diligence to ascertain the owner of the property. By article 7698, Vernon's Sayles' Texas Civ. Stats., vol. 4, among other things, it is provided that:

"Wherever the owner or owners of any lands or lots returned delinquent or reported sold to the state, or that may hereafter be reported sold or returned delinquent for the taxes due thereon for any year or number of years are nonresidents of the state or the name of the owner or owners of said land or lots be unknown, then, upon affidavit setting out that the owner or owners are nonresidents, or that the owner or owners are unknown to the attorney for the state, and after inquiry cannot be ascertained, said parties shall be cited and made parties defendant by notice in the name of the state and county, directed to all persons owning or having or claiming any interest in the following described land delinquent to the state" or county for taxes, setting out the description of the land, etc., as contained on the assessment roll.

If the owner of the land was known, or could have been known to the county attorney at the time of institution of the suit, by the exercise of reasonable diligence, and he failed to exercise such diligence to ascertain the true owner, then the tax proceedings and sale thereunder would be void, for the reason that the true owner was not in fact cited to appear and answer.

Judge Gaines, in the case of Scales v. Wren, 103 Tex. 304, 127 S. W. 164, held, as shown by the syllabus, that:

"Where an owner of land has his title on record, ascertainable by the county attorney on inquiry, and he is within the jurisdiction of the court, he is not a party to nor bound by a judgment and sale of the land for taxes thereunder in a proceeding against the 'unknown owner' of the land."

While the petition in the tax suit against the unknown owner was duly attested by the assistant county attorney, as required by the statute above cited, still, this was not conclusive evidence of the fact that the owner was unknown; and in a suit of this character by the owner to recover the land he has the right to raise this issue, and show by competent evidence that, by the exercise of reasonable diligence, the county attorney could have ascertained his ownership of the land before the institution of the tax proceedings, and if this is done to the satisfaction of the jury, then and in that event the judgment in the tax proceeding and the sheriff's deed based thereon would be nullities, and no title could be acquired by virtue thereof. See Nunley v. Blanton, 103 Tex. 316, 126 S. W. 1110; Wren v. Scales, 55 Tex. Civ. App. 62, 119 S. W. 879; Sellers v. Simpson, 53 Tex. Civ. App. 205, 115 S. W. 888; Bingham v. Matthews, 39 Tex. Civ. App. 41, 86 S. W. 781; Harvey v. Provident Investment Co., 156 S. W. 1127. We think the evidence was sufficient to raise this issue, and it should have been submitted to the jury under an appropriate charge. This not hav-

ing been done, and appellees having failed to except to the charge of the court instructing the jury that the record title to the property in question was in intervener, he insists that it becomes our duty to reverse and render the case, instead of remanding it, on the theory that the failure to except to such charge is conclusive on such issue on another trial in the event of a reversal—citing in support thereof the Acts of 1913, p. 113; article 2061, Vernon's Sayles' Rev. Civ. Stats., vol. 2; Needham v. Cooney, 173 S. W. 979, and authorities there cited; I. & G. N. Ry. Co. v. Feldman, 170 S. W. 133; Gulf, Colorado & Santa Fé Ry. Co. v. Battle, 169 S. W. 1048; Bohn v. Burton-Lingo Co., 175 S. W. 173; G., T. & W. Ry. Co. v. Dickey, 173 S. W. 967. While it is true that the statute cited prescribes that the ruling of the court in giving, refusing, or qualifying instructions to the jury should be regarded as approved unless excepted to, and the charge under consideration was not excepted to by appellees, still we are of opinion that this statute was intended to apply to appellants only who are urging a reversal based thereon. When a case is reversed for any reason we think it should stand in the court below just as though a new trial had been granted there, leaving all questions involved open in the court below for its consideration upon another trial. All of the cases cited by appellant are cases in which appellants were undertaking to have charges reviewed which were not excepted to, and therefore came within the rule prescribed by the statute, so that these cases are not authority for the contention of appellant; and, having determined that the court erred as hereinbefore indicated, it becomes our duty to reverse and remand the case for another trial not inconsistent with the views herein expressed, and it is so ordered.

Reversed and remanded.

KEY, C. J. While concurring in the result reached in this case, I do not indorse all that is said in the opinion of Mr. Justice RICE. My views as to what is necessary to constitute an estoppel in pais were expressed in Westbrook v. Guderian, 3 Tex. Civ. App. 406, 22 S. W. 59, and they have undergone no change. As to Mr. Atkinson's authority to so act for the improvement company as to estop that corporation, I think the proof was sufficient. He was its secretary, treasurer, and general manager, and testified that he managed all its business, including the payment of taxes; and while, by force of statutory law, he could not, acting alone, execute a deed that would bind the corporation, he was in other respects the corporation's alter ego or other self and authorized to act and speak for it. However, I do not think the question of estoppel is in the case. When Street, the government's attorney, interviewed Atkinson concerning the ownership of the

land, he did not do so as an intending purchaser at a future tax sale; and there was nothing to indicate that he was eliciting information for the purpose of transmitting it to others, or that Atkinson intended that such information should be so transmitted. In fact, Street did not become a purchaser at the tax sale, and therefore no estoppel could be asserted as to him; and, for the reasons just stated, as well as for other reasons, no estoppel can be based upon Atkinson's representations to Street. ·

Furthermore, it is difficult, if not impossible, to see how the question of estoppel could arise as to the validity of the tax title. The proceedings which resulted in the tax sale seem to have been regular; and the deed made by the sheriff in pursuance thereof vested title in the purchaser, unless it be shown that, at the time the suit was instituted, Street, the officer who represented the state and made the affidavit of unknown ownership, either knew, or by the exercise of reasonable diligence could have known, that the improvement company was the owner of the property. If he had such knowledge or failed to exercise such diligence the tax title is void; but if he did not have such knowledge and exercised proper diligence in that regard, then that title is valid, although the facts which show the exercise of proper diligence may not be sufficient to constitute an estoppel.

Those issues should have been submitted to the jury, and their answers thereto would have settled the question of title. The fact that the deed records of the county show an apparent title in the corporation is not conclusive evidence as to Street's knowledge of ownership, because the corporation could have parted with its title without the evidence thereof having been placed of record; and if, in the exercise of proper care and diligence, Street concluded it had done so, and if, after exercising like care and diligence, he could not ascertain who was the real owner, then the ownership was unknown to him, and the tax title is valid.

## On Appellant's Motion for Rehearing.

RICE, J. [7] It is strongly urged on the part of appellant, in an able and elaborate motion for rehearing, that we erred in failing to reverse and render judgment for him, on the ground that appellees are not entitled to have the case reversed and remanded for trial on the issue of the diligence exercised by the county attorney, in order to ascertain the ownership of the lots in controversy before the institution of the tax suits, for the following reasons: First, because the court in its charge to the jury eliminated from their consideration all issues other than that of estoppel, telling them that intervener owned the record title to the lots in controversy, and withdrawing from them all issues except those of estoppel and improvements in

good faith, which charge was not excepted to by appellees; and, second, because appellees waived their right to have the issue of diligence of the county attorney in this respect submitted to the jury, for the reason that they failed to except to the refusal of the court to give their special charges submitting such issue. The court instructed the jury that the evidence in the case showed that the intervener had the record title to the lots in controversy, stating that the only issues submitted for their consideration were those of estoppel and improvements in good faith. This charge was not excepted to by appellees, but they excepted to the charge of the court on account of its failure to submit the issue as to the diligence of the county attorney in ascertaining the ownership of the lots before bringing the tax suits, and requested two special charges submitting this issue to the jury, the refusal of which, however, was not excepted to by them.

Such being the state of the record, we must, under the law, hold that appellees have approved the action of the court, both in instructing the jury as to the record title's being in appellant, and in eliminating all issues other than those of estoppel and improvements in good faith, as well as in refusing to give their special charges on the issue of diligence exercised on the part of the county attorney to ascertain the ownership of the lots in controversy before instituting the tax suits in question. See Acts 1913, p. 113; article 2061, vol. 2, Vernon's Sayles' Rev. Civ. Stats. See, also, Floegge v. Meyer, 172 S. W. 194; Railway Co. v. Bartek, 177 S. W. 139; Railway Co. v. Alcorn, 178 S. W. 833; Steele v. Dover, 170 S. W. 813; Railway Co. v. Barnes, 168 S. W. 991; Elser v. Putnam, 171 S. W. 1052; Railway Co. v. Wadsack, 166 S. W. 45; I. & G. N. Ry. Co. v. Bland, 181 S. W. 504.

That act of the Legislature, we think, applies as well to appellees as to appellants, and our original opinion holding to the contrary was error, and is now withdrawn. See Insurance Co. v. Finegold, 183 S. W. 836; Railway Co. v. West, 174 S. W. 293. Article 2061, supra, provides that:

"The ruling of the court in the giving, refusing or qualifying of instructions to the jury shall be regarded as approved unless excepted to as provided for in the foregoing articles."

[8] Appellees having failed to except to the court's charge in the respect mentioned, and to the refusal to give their special charges, as above indicated, must, we think, be held to have acquiesced in such rulings of the trial court, and are bound thereby. And even had they properly excepted, as required by law, still, by their failure to file any cross-assignments of error, they are not now in a position to complain of such rulings. See rule 101 (159 S. W. xi) for the government of district courts; Meyers v. Maverick, 28 S. W. 717; Tarrant County v. Rogers, 104 Tex. 227, 135 S. W. 110, 136 S. W. 255; article 1639, Vernon's Sayles' Rev. Civ. Stats. Under the new practice act it became necessary for appellees, in order to present this question here, not only to except to the charge and the refusal to give their special charges, but also to file their cross-assignments of error.

In addition to what has just been stated, we find that appellees in their brief, on page 75, made the following admission (to which our attention has been called by appellant in his motion for rehearing, and which we inadvertently overlooked in the preparation of our original opinion):

"Appellees have never contended in this case that they or their grantors had the legal title to the lots because of the title acquired by the suit for delinquent taxes; but appellees have contended that they did have title to the lots because appellant and the Central Texas Improvement Company were estopped to claim title to the lots in question because of the statements of Atkinson to Street."

If, therefore, the issue of estoppel was improperly submitted, as we have held, then, under such admission, it is clear that appellant would have the legal title to the lots in controversy, and judgment should be rendered for him therefor.

For all of which reasons we think we are justified in reversing and rendering judgment in this case for appellant; and, as the facts have been fully developed, and the jury having found the value of the lots in controversy, as well as that of the improvements thereon, judgment is now here rendered for appellant for said lots, subject however to all the conditions imposed as required by chapter 2, title 128, Rev. Stats. of 1911, and it is so ordered.

Motion granted. Reversed and rendered.